UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

COURTNEY WRIGHT,

    Plaintiff,

v.

MERCER (US) INC.

    Defendant.

------------------------------------------------------------------x

**COMPLAINT**

Case No. 19-cv-5615

Jury Trial Demanded

Plaintiff Courtney Wright, by and through undersigned counsel, states the following for her Complaint against Defendant Mercer (US) Inc., on personal knowledge as to her own acts and observations, and on information and belief as to all other matters.

## THE PARTIES

1. Plaintiff Courtney Wright ("Plaintiff" or "Wright") resides in New York, New York, and is a citizen of New York.

2. Defendant Mercer (US) Inc. ("Defendant" or "Mercer"), is a Delaware corporation with a principal place of business in New York, and is a citizen of New York.

## JURISDICTION AND VENUE

3. Plaintiff Courtney Wright was previously employed by Defendant. She was an employee, and Defendant was an employer, within the meaning of the New York City Human Rights Law, N.Y.C. Admin Code § 8-107 et seq.

4. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, as this action raises claims under a federal civil rights statute, 42 U.S.C. § 1981. This Court has supplemental jurisdiction over city and state law claims in this action under 28

1

U.S.C. § 1367 because these claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over the Defendant as the acts and events giving rise to this case occurred in New York.

6. Venue is proper in the Southern District of New York as the acts and events giving rise to this case occurred in the Southern District of New York.

## FACTS

7. Plaintiff Courtney Wright has a long and documented history of success in the financial services industry; she holds a bachelor's degree from Spelman College and a master's degree from the University of Pennsylvania.

8. In 2018, Wright interviewed with Mercer in New York City, traveling from San Francisco at her own expense.

9. During the interview, Manager Amy Scissons asked Wright what would be necessary to get her to return to New York from San Francisco, and Ms. Wright said it would be a job.

10. Scissons offered Wright the job, and persuaded Wright to leave the San Francisco area and move to New York City in order to take on an opportunity as a Principal and Wealth Marketing Leader for Growth Markets.

11. Wright moved to New York and began working with Mercer in its Manhattan office.

12. Her pay included significant cash compensation, plus eligibility to participate in an incentive compensation plan, and additional fringe benefits.

13. Wright started work on or about February 12, 2018.

14. She almost immediately began producing strong results in her job, results that were backed up by data metrics from Mercer's analytics program.

15. Wright produced revenue of $1.6 million in her first three months on the job.

16. She also increased Mercer's share of voice ("SOV") by six percent (6%) across 22 countries, also in just three months on the job.

17. Wright was the only black person on her immediate team; her supervisor, Amy Scissons, was white.

18. In Wright's broader work group, there was only one other black employee.

19. Wright was doing her job well. As is normal in the workplace, projects were the result of collaboration between Wright, her supervisor, and others; it is normal and expected for projects to require edits and changes.

20. On May 17, 2018, Wright discussed the group's marketing strategy with her supervisor, and Wright told her supervisor that she would prepare a revised marketing strategy as part of what Mercer presented as a 90-day plan to improve performance.

21. Wright set about doing exactly what she had told her supervisor she would do, consistent with the strong performance she had exhibited so far on the job. However, Scissons started to demand that Wright prepare the revised marketing plan sooner than the planned 90-days.

22. Wright told Scissons that this would be a challenge because of the time needed to collect necessary data from teammates across the globe. Wright had to build this plan from scratch with no meaningful input or template.

23. Wright's colleagues who covered other regions did not have marketing strategies as robust as hers, nor did their managers impose a 90-day plan on them.

24. During this period, Scissons was dismissive and non-collaborative towards Wright, undermining Wright's ability to do exactly what Scissons had asked her to do. For instance, Scissons would cut Wright off in conversations, hang up on her on the phone, and not examine work product that Wright sent her for review.

25. Unexpectedly, just days later, on May 21, 2018, Wright's supervisor, along with human resources, gave her a "Final Warning", criticizing her performance. The warning came out of the blue: Mercer had not given any prior warnings or lesser steps of progressive discipline.

26. This out-of-the-blue performance memo was extremely distressing to Wright, because it lacked any factual basis.

27. Wright opposed this memorandum, and spoke with Human Resources on or about May 31, 2018, to indicate that she wished to appeal the performance memorandum.

28. Wright also told human resources that this situation was causing her extreme anxiety.

29. Human resources suggested that Wright contact the Employee Assistance Plan ("EAP") and/or explore Short Term Disability benefits.

30. During this period, Wright was holding one-on-one meetings every Thursday with her supervisor.

31. On or about June 7, 2018, Wright started receiving medical attention for her anxiety.

32. She first spoke with Mercer's EAP counselor on or about June 13, 2018.

33. On June 14, 2018, Wright again met with her supervisor.

34. Wright requested that human resources attend the next meetings with her supervisor, but HR refused and said they would only attend if a supervisor requested it.

35. On June 20, 2018, Wright spoke with Mercer's Leave Management unit, which on information and belief is part of its human resources department, about the Short Term Disability application process.

36. Wright again spoke with Leave Management on the morning of June 21, 2018.

37. On June 21, 2018 - the very next day - Mercer, through Wright's supervisor and with the involvement of human resources, terminated Wright's employment.

38. Wright has suffered damages, including loss of pay and benefits and emotional distress, as a result of Mercer's actions.

39. Mercer acted with willful or wanton negligence, recklessness, and/or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, in that Defendant allowed bias and stereotypes to affect its actions.

## CLAIMS

### FIRST CAUSE OF ACTION
### Violation of 42 U.S.C. § 1981
### Race Discrimination

40. Wright incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

41. Wright is black.

42. Defendant took adverse action against Wright, including but not limited to termination of her employment.

43. Wright's race was a motivating or other causally-sufficient factor in Defendant's actions; among other things, Defendant's actions reflected implicit bias toward black employees. Wright was delivering objectively strong performance. But Mercer nonetheless chose to impose a final warning and then termination for supposed deficient performance. Mercer's actions reflect

false social stereotypes about black employees being supposedly less capable than their white peers. Mercer's actions reflect a form of "confirmation bias" of these stereotyped notions.

44. Mercer's advanced reasons for its actions are pretextual. Among other things, the imposition of a "final warning" without lesser discipline does not follow Mercer's standard practices; further, there was no factual basis for the warning or termination, and Wright was performing at or above the reasonable expectations of her employer.

45. On information and belief, Wright's supervisor has not taken such action toward similarly-situated non-black coworkers on Wright's former team, and these coworkers have been treated better, despite Wright's equal or better performance.

46. As a direct and proximate result of Defendant's unlawful actions, Wright has been damaged and continues to suffer damages, including but not limited to loss of pay and emotional distress.

47. Wright prays that the Court find Defendant liable for race discrimination in violation of 42 U.S.C. § 1981, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. § 1981
### Retaliation

48. Wright incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

49. Wright engaged in activity protected by Section 1981, including but not necessarily limited to the fact that she opposed the "final warning" and told human resources that she intended to appeal the warning.

50. Defendant took adverse action against Wright because of her protected activity, ultimately terminating her employment.

51. As a direct and proximate result of Defendant's unlawful actions, Wright has been damaged and continues to suffer damages, including loss of pay and benefits and emotional distress.

52. Wright prays that this Court find Defendant liable for retaliation under 42 U.S.C. § 1981, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### THIRD CAUSE OF ACTION
### Violation of the New York City Human Rights Law,
### N.Y.C. Admin. Code § 8-107 et seq.
### Race Discrimination

53. Wright incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

54. Wright is black.

55. Defendant took adverse action against Wright, including but not limited to termination of her employment.

56. Wright's race was a motivating or other causally-sufficient factor in Defendant's actions; among other things, Defendant's actions reflected implicit bias toward black employees. Wright was delivering objectively strong performance. But Mercer nonetheless chose to impose a final warning and then termination for supposed deficient performance. Mercer's actions reflect false social stereotypes about black employees being supposedly less capable than their white peers. Mercer's actions reflect a form of "confirmation bias" of these stereotyped notions.

57. Mercer's advanced reasons for its actions are pretextual. Among other things, the imposition of a "final warning" without lesser discipline does not follow Mercer's standard

practices; further, there was no factual basis for the warning or termination, and Wright was performing at or above the reasonable expectations of her employer.

58. As a direct and proximate result of Defendant's unlawful actions, Wright has been damaged and continues to suffer damages, including but not limited to loss of pay and emotional distress.

59. Wright prays that the Court find Defendant liable for race discrimination in violation of the New York City Human Rights Law, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### FOURTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law,
### N.Y.C. Admin. Code § 8-107 et seq.
### Disability Discrimination

60. Wright incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

61. Wright spoke with her employer and identified that she was experiencing anxiety; she thereafter availed herself of professional care for this condition.

62. Wright's condition was a qualifying disability under the New York City Human Rights Law, and/or Mercer perceived and treated it as being a disability.

63. Shortly after Wright sought treatment and short-term disability leave, Defendant took adverse action against Wright, terminating her employment.

64. As a direct and proximate result of Defendant's unlawful actions, Wright has been damaged and continues to suffer damages, including but not limited to loss of pay and emotional distress.

65. Wright prays that the Court find Defendant liable for disability discrimination in violation of the New York City Human Rights Law, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### FIFTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law,
### N.Y.C. Admin. Code § 8-107 et seq.
### Retaliation

66. Wright incorporates each and every foregoing and succeeding paragraph of this Complaint as if fully set forth here.

67. Wright engaged in activity protected by the New York City Human Rights Law, including but not necessarily limited to the fact that she opposed the "final warning" and told human resources that she intended to appeal the warning.

68. Defendant took adverse action against Wright because of her protected activity, ultimately terminating her employment.

69. As a direct and proximate result of Defendant's unlawful actions, Wright has been damaged and continues to suffer damages, including loss of pay and benefits and emotional distress.

70. Wright prays that this Court find Defendant liable for retaliation, and grant all relief permitted by law, as set forth in the Prayer in this Complaint.

### JURY DEMAND

Plaintiff Courtney Wright respectfully demands a jury trial on all issues so triable.

### PRAYER FOR RELIEF

Plaintiff Courtney Wright prays that this Court enter judgment in her favor, and grant all relief allowed under law, including but not limited to:

      A.      Actual economic damages, including lost wages and benefits, adjusted for promotional opportunities lost;

      B.      Actual non-economic damages, including damages for garden-variety emotional distress;

      C.      Punitive damages and civil penalties;

      D.      Attorney's fees, expert fees, and costs;

      E.      Reinstatement, backpay, and/or frontpay;

      F.      An order that Defendant cease and desist from all discriminatory practices and revise Wright's personnel records to remove all negative references; and

      G.      Any other and/or further relief permitted by law.

Dated: June 16, 2019
       New York, New York

Respectfully submitted,

KEENAN & BHATIA, LLC

By: _/s/ E.E. Keenan_____
Edward (E.E.) Keenan
90 Broad Street, Suite 200
New York, NY  10004
Tel:  (917) 975-5278
ee@keenanfirm.com

*Attorney for Plaintiff Courtney Wright*